IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHRISTINA PARKS,

       Plaintiff,               No.  CIV S-06-0135 DAD

    v.

MICHAEL J. ASTRUE,       <u>ORDER</u>
Commissioner of Social Security,[1]

       Defendant.
_____/

       This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.  For the reasons explained below, the decision of the Commissioner of Social Security (Commissioner) is affirmed.

**PROCEDURAL BACKGROUND**

       On August 28, 2002, plaintiff Christina Parks applied for Social Security Disability Insurance benefits under Title II and Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act (Act).  (Transcript (Tr.) at 67-70, 279, 280-83.)  The

---

[1]  On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Mr. Astrue is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1).

1   Commissioner denied plaintiff's applications initially and on reconsideration.  (Tr. at 51-56, 60-

2   64, 284-93.)  Pursuant to plaintiff's request dated May 6, 2003, a hearing was held before an

3   administrative law judge (ALJ) on November 19, 2003, at which time plaintiff was represented

4   by counsel.  (Tr. at 66, 303-27.)  In a decision issued on February 24, 2004, the ALJ determined

5   that plaintiff was not disabled.  (Tr. at 34-45.)  On April 5, 2004, plaintiff requested review by

6   the Appeals Council.  (Tr. at 250-51.)  On June 16, 2004, the Appeals Council vacated the

7   decision of the ALJ and remanded the case for further proceedings and a new decision.  (Tr. at

8   252-54.)

9           A second hearing was held before the same ALJ on September 14, 2004, at which

10  plaintiff was represented by counsel.  (Tr. at 328-56.)  In a decision issued on December 16,

11  2004, the ALJ again determined that plaintiff was not disabled.  (Tr. at 12-27.)  In that regard, the

12  ALJ entered the following findings:

13          1.      The claimant meets the nondisability requirements
                    for a period of disability and Disability Insurance
14                  Benefits set forth in Section 216(i) of the Social
                    Security Act and is insured for benefits through
15                  December 31, 2001.

16          2.      The claimant has not engaged in substantial gainful
                    activity since the alleged onset of disability.
17
18          3.      The claimant's complex partial seizure disorder is a
                    severe impairment, based upon the requirements in
19                  the Regulations (20 CFR §§ 404.1521 and 416.921).

20          4.      This medically determinable impairment does not
                    meet or medically equal one of the listed
21                  impairments in Appendix 1, Subpart P, Regulation
                    No. 4.

22          5.      The undersigned finds the claimant's allegations
                    regarding her limitations are not totally credible for
23                  the reasons set forth in the body of the decision.

24          6.      The undersigned has carefully considered all of the
                    medical opinions in the record regarding the
25                  severity of the claimant's impairment (20 CFR §§
                    404.1527 and 416. 927).

26  /////

7.   The claimant has no exertional, postural, manipulative, visual, or communicative limitations and, therefore, retains the residual functional capacity to lift/carry/push/pull 50 pounds or more frequently and 100 pounds or more occasionally; stand and/or walk at least 6 hours in an 8-hour day; and sit at least 6 hours in an 8-hour day.  She is precluded from driving, working at heights, or working around dangerous machinery.

8.   The claimant's past relevant work as claims assistant clerk and production clerk did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR §§ 404.1565 and 416.965).

9.   The claimant's medically determinable [sic] does not prevent the claimant from performing her past relevant work.

10.  The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(e) and 416.920(e)).

(Tr. at 26.)  On February 7, 2005, plaintiff requested review of the ALJ's decision, but the Appeals Council declined review on December 6, 2005.  (Tr. at 7-10, 11.)  Plaintiff then sought judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on January 23, 2006.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Morgan, 169 F.3d at 599;

/////

1  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389,

2  401 (1971)).

3           A reviewing court must consider the record as a whole, weighing both the

4  evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Jones, 760

5  F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum

6  of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

7  substantial evidence supports the administrative findings, or if there is conflicting evidence

8  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

9  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

10 improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

11 1335, 1338 (9th Cir. 1988).

12          In determining whether or not a claimant is disabled, the ALJ should apply the

13 five-step sequential evaluation process established under the Social Security regulations.  Title 20

14 of the Code of Federal Regulations, Section 404.1520, sets forth the test used to assess disability.

15 See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  This five-step process can be summarized

16 as follows:

17          Step one: Is the claimant engaging in substantial gainful activity?
            If so, the claimant is found not disabled.  If not, proceed to step
18          two.

19          Step two: Does the claimant have a "severe" impairment?  If so,
            proceed to step three.  If not, then a finding of not disabled is
20          appropriate.

21          Step three: Does the claimant's impairment or combination of
            impairments meet or equal an impairment listed in 20 C.F.R., Pt.
22          404, Subpt. P, App. 1?  If so, the claimant is conclusively
            presumed disabled.  If not, proceed to step four.
23
            Step four: Is the claimant capable of performing his past work?  If
24          so, the claimant is not disabled.  If not, proceed to step five.

25          Step five: Does the claimant have the residual functional capacity
            to perform any other work?  If so, the claimant is not disabled.  If
26          not, the claimant is disabled.

1    Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The claimant bears the burden of proof in

2    the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The

3    Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.;

4    Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

5                                                    **APPLICATION**

6              Plaintiff advances four arguments in her motion for summary judgment.  First,

7    plaintiff contends that the ALJ erred at step three of the sequential evaluation by failing to find

8    that her severe impairments met or equaled the criteria under Listings 11.02 and 11.03.  Second,

9    she argues that the ALJ's determination of her residual functional capacity was erroneous.  Third,

10   she maintains that the ALJ failed to consider her allegations and statements as to the nature and

11   extent of her functional limitations.  Fourth, she asserts that the ALJ failed to find additional

12   severe impairments at step two.  The court addresses these arguments below, although in order

13   according to the relevant steps of the sequential evaluation process.

14   **I.  Step Two:  Failure to Find Additional Severe Impairments**

15             It is well established that at step two of the sequential evaluation process the ALJ

16   must determine if the claimant has a medically severe impairment or combination of

17   impairments.  Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S.

18   at 140-41).  The purpose of step two of the sequential evaluation is merely to identify claimants

19   whose medical impairment is so slight that it is unlikely they would be disabled even if age,

20   education, and experience were taken into account.  Yuckert, 482 U.S. at 153.  "An impairment

21   or combination of impairments can be found 'not severe' only if the evidence establishes a slight

22   abnormality that has 'no more than a minimal effect on an individual's ability to work.'"

23   Smolen, 80 F.3d at 1290 (citations omitted).  See also 20 C.F.R. §§ 404.1521(a) and 416.921(a).

24             Here, plaintiff applied for disability benefits on the ground that she was unable to

25   work because of dizziness, vomiting, diarrhea, headaches, and memory loss due to seizures.  (Tr.

26   at 53, 284.)  The ALJ determined that plaintiff's only severe impairment is her seizure disorder.

(Tr. at 17.)  The ALJ considered the evidence at length and found plaintiff's medical history

significant for irritable bowel syndrome, migraine headaches, hypothyroidism, and adjustment

disorder with anxiety and depression, but he concluded that these conditions are not severe

impairments because they do not, singly or in combination, significantly limit plaintiff's physical

or mental ability to perform basic work activities.  (Id. at 17-20.)

Plaintiff argues that the ALJ's "handling of step two" requires reversal.  (Pl.'s

Mot. for Summ. J. at 9.)  Plaintiff's discussion of the alleged step two error begins with the

assertion that "[m]ost of the foregoing impairments were disposed of at step two."  (Id. at 19.)

Plaintiff's reference to "foregoing impairments" is confusing because the preceding discussion

concerned symptoms rather than impairments.  However, plaintiff concluded with the assertion

that the ALJ did not consider her symptoms, including "seizure frequency[,] . . . . seizure

severity, her major depression, her memory problems, migraines, and her IBS."  (Id.)

To the extent that plaintiff's depression, memory problems, and headaches are

symptoms of her seizure disorder, the ALJ did not err by failing to identify them as impairments

at step two.  To the extent that plaintiff argues it was error not to identify depression, memory

problems, migraine headaches, and irritable bowel syndrome as severe impairments at step two,

plaintiff has not pointed to evidence in the record demonstrating that these four conditions, singly

or in combination, had more than a minimal effect on plaintiff's ability to perform basic work

activities during the relevant times.

Plaintiff's own summary of the record reflects that (1) the consultative

psychologist who examined plaintiff in February 2003 diagnosed moderate adjustment disorder

with anxiety and depression but imposed no meaningful functional limitations, (2) the

consultative internist who examined plaintiff in February 2003 diagnosed both grand mal and

partial complex seizures and migraine headaches but indicated no limitations other than

restricting plaintiff from driving and from working at heights or around dangerous machinery, (3)

the views of the examining medical professionals were adopted by two non-examining doctors,

1  and (4) in May 2004, a treating psychologist found plaintiff's mood substantially improved.

2  (Pl.'s Mot. for Summ. J. at 4-6.)

3  The court finds that the ALJ's determination at step two concerning plaintiff's

4  severe impairments is supported by the evidence in the administrative record.  The ALJ did not

5  screen out any severe impairment or preclude consideration of any symptom arising from

6  plaintiff's seizure disorder, which was found to be a severe impairment.  Plaintiff's arguments to

7  the contrary are unpersuasive.

8  **II.  Step Three:  Failure to Find Plaintiff Met the Criteria of Listings 11.02 and 11.03**

9  At step three of the sequential evaluation process, a claimant who demonstrates

10  that he or she suffers from a severe impairment that is either listed in Appendix 1 of the

11  regulations or equal to a listed impairment will be found disabled without regard to age,

12  education, and work experience.  20 C.F.R. §§ 404.1525(a) and 416.925(a).  The Listing of

13  Impairments in Appendix 1 "describes for each of the major body systems impairments that [are]

14  consider[ed] to be severe enough to prevent an individual from doing any gainful activity."  20

15  C.F.R. §§ 404.1525(a) and 416.925(a).  However, a claimant's impairment will not be considered

16  listed solely because the claimant has the diagnosis of a listed impairment; the impairment must

17  satisfy all of the medical criteria of the listing.  20 C.F.R. §§ 404.1525(d) and 416.925(d).  See

18  also Sullivan v. Zebley, 493 U.S. 521, 530 (1990); Marcia v. Sullivan, 900 F.2d 172, 175 (9th

19  Cir. 1990).

20  An impairment not listed in Appendix 1 may be found medically equivalent to a

21  listed impairment "if it is at least equal in severity and duration to the criteria of any listed

22  impairment."  20 C.F.R. §§ 404.1526(a) and 416.926(a).  See also Tackett, 180 F.3d at 1099.  If a

23  claimant has multiple impairments, and no individual impairment meets or equals a listed

24  impairment, the Commissioner must review the findings related to all impairments to determine

25  whether the findings are of medical significance equal to those of a listed impairment.  Id.  See

26  also Marcia, 900 F.2d at 175-76; 42 U.S.C. § 423(d)(2)(B); Social Security Ruling (SSR) 83-19

7

("An impairment 'meets' a listed condition . . . only when it manifests the specific findings described in the set of medical criteria for that listed impairment.").

Here, plaintiff alleges that she met the criteria of Listings 11.02 and 11.03. The two listings are contained in the category of neurological impairments and provide as follows:

> 11.02 *Epilepsy–convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.* With:
> A.   Daytime episodes (loss of consciousness and convulsive seizures) or
> B.   Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

> 11.03 *Epilepsy–nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.* With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 11.02 and 11.03.

Section 11.00 contains further requirements for certain neurological impairments, including epilepsy:

> In epilepsy, regardless of etiology, degree of impairment will be determined according to type, frequency, duration, and sequelae of seizures. At least one detailed description of a typical seizure is required. Such description includes the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena. The reporting physician should indicate the extent to which description of seizures reflects his own observations and the source of ancillary information. Testimony of persons other than the claimant is essential for description of type and frequency of seizures if professional observation is not available.

> Under 11.02 and 11.03, the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment. Adherence to prescribed antiepileptic therapy can ordinarily be determined from objective clinical findings in the report of the physician currently providing

treatment for epilepsy.  Determination of blood levels of phenytoin sodium or other antiepileptic drugs may serve to indicate whether the prescribed medication is being taken.  When seizures are occurring at the frequency stated in 11.02 or 11.03, evaluation of the severity of the impairment must include consideration of the serum drug levels.  Should serum drug levels appear therapeutically inadequate, consideration should be given as to whether this is caused by individual idiosyncrasy in absorption of metabolism of the drug.  Blood drug levels should be evaluated in conjunction with all the other evidence to determine the extent of compliance.  When the reported blood drug levels are low, therefore, the information obtained from the treating source should include the physician's statement as to why the levels are low and the results of any relevant diagnostic studies concerning the blood levels.  Where adequate seizure control is obtained only with unusually large doses, the possibility of impairment resulting from the side effects of this medication must be also assessed.  Where documentation shows that use of alcohol or drugs affects adherence to prescribed therapy or may play a part in the precipitation of seizures, this must also be considered in the overall assessment of impairment level.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00A.

Here, the ALJ determined that plaintiff has complex partial seizure disorder, an impairment that is severe but not severe enough in this case to meet or medically equal, either singly or in combination, any impairment listed in Appendix 1.  (Tr. at 20.)  The ALJ based his determination on a thorough analysis of the medical records.  (Tr. at 20-23.)  With regard to Listings 11.02 and 11.03, the ALJ noted the gaps in plaintiff's treatment and found it "unreasonable to conclude that the claimant's seizures cannot be controlled with medication inasmuch as she has not had an ongoing relationship with a treatment source."  (Tr. at 22.)  The ALJ also found that, "[d]ue to the sporadic nature of the claimant's seizure treatment, the record fails to establish that she experiences the frequency of seizures (despite being on prescribed treatment) as required by listings 11.02 or 11.03."  (Tr. at 23.)  In addition, as a result of the combination of sporadic treatment and noncompliance with prescribed treatment, the record failed to establish that plaintiff had been on prescribed treatment for a continuous period of at least three months, as required by listings 11.02 and 11.03.  (Id.)  The ALJ's summary of the evidence also reveals that, despite several treatment notes in 2002 and 2004 indicating that the

1   treating physician planned to obtain laboratory studies to establish therapeutic medication levels,

2   "the evidence of record contains no laboratory reports concerning medication levels, nor do the

3   treatment notes make any reference as to whether the studies were conducted and if so, the

4   results of those studies."  (Tr. at 21-22.)

5          "A claimant's impairment does not meet the epilepsy listing unless it 'persists

6   despite the fact that the individual is following prescribed anticonvulsive treatment.'"  Lewis v.

7   Apfel, 236 F.3d 503, 513 (9th Cir. 2001) (quoting 20 C.F.R., Pt. 404, Subpt. P, App. 1, §

8   11.00A).  Ordinarily, an ALJ can determine the claimant's adherence to prescribed therapy from

9   objective clinical findings included in the treating physician's report.  Id.  "An ALJ cannot allow

10  a claim under the epilepsy listing without a record of anticonvulsant blood levels."  Id. (citing 20

11  C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00A).  Here the ALJ noted the absence of laboratory

12  reports concerning medication levels, and plaintiff has not disputed the ALJ's finding in that

13  regard.

14         At step three, it is the claimant who bears the burden of proof.  See Yuckert, 482

15  U.S. at 146 n.5.  It was therefore plaintiff's burden in this case to demonstrate satisfaction of all

16  requirements of Listings 11.02 and 11.03.  The court finds that substantial evidence supports the

17  ALJ's determination that plaintiff's severe impairment does not meet or equal the epilepsy

18  listing.  The ALJ's determination at step three of the sequential evaluation must be affirmed.  See

19  Sprague, 812 F.2d at 1229-30.

20  **III.  Step Four:  Determining Residual Functional Capacity**

21         Plaintiff's remaining arguments concern the ALJ's determination of her residual

22  functional capacity.  Plaintiff argues that the determination was erroneous and that the ALJ failed

23  to analyze her symptoms properly.  Plaintiff argues further that the ALJ did not follow the law,

24  that his position on her symptoms cannot even be discerned, and that in particular he did not

25  consider her seizure frequency, memory loss, depression, and irritable bowel syndrome in

26  making his residual functional capacity assessment.

1     A claimant's residual functional capacity is what the claimant can still do despite

2     any limitations and is an assessment based upon all relevant evidence.  20 C.F.R. § 416.945(a);

3     see also Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001).  It is the duty of the ALJ to

4     determine the claimant's residual functional capacity from the record.  20 C.F.R. § 416.946(c);

5     see also Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

6     Here, the ALJ relied in large part on treatment records and the objective findings

7     of treating, examining, and non-examining medical professionals.  (Tr. at 24-25.)  On the basis of

8     substantial evidence in the record, the ALJ reasonably found plaintiff to have (1) no exertional,

9     postural, manipulative, visual, or communicative limitations; (2) the capacity to lift, carry, push,

10    or pull 50 pounds or more frequently and 100 pounds or more occasionally; (3) the ability to

11    stand and/or walk for at least 6 hours in an 8-hour day; and (4) the ability to sit for at least 6

12    hours in an 8-hour day.  (Tr. at 25.)  The ALJ found plaintiff to be precluded from driving,

13    working at heights, and working around dangerous machinery.  (Id.)  A vocational expert

14    testified that plaintiff could return to her past relevant work as a claims assistant clerk or as a

15    production clerk, as those jobs were performed by plaintiff.  (Id.)

16    The ALJ carefully considered plaintiff's allegations of totally disabling symptoms

17    and found them not supported by the record.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir.

18    1996) (the determination of credibility is a function of the ALJ, acting on behalf of the

19    Commissioner); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985) (an ALJ's assessment of

20    credibility should, in general, be given great weight).  The ALJ made specific and detailed

21    findings in not fully crediting plaintiff's testimony to the extent that it conflicted with his

22    findings regarding her residual functional capacity.  (Tr. at 23-25.)  For example, the ALJ cited

23    inconsistent reports concerning plaintiff's seizure frequency, plaintiff's limited history of

24    treatment, evidence that medication is at least somewhat beneficial in treating plaintiff's seizure

25    disorder, the small number of anticonvulsant medications prescribed so far in comparison to the

26    large number of treatment options not yet tried, the allegation of a number of injuries that are not

11

reflected in the medical records, and evidence that plaintiff sought medical treatment for a thyroid disorder and reversal of her tubal ligation but did not seek treatment for her seizure disorder during periods of time when she lacked medical insurance. (Tr. at 23-24.) The court finds that the ALJ fairly characterized the record and sufficiently stated specific, clear, and convincing reasons for not fully crediting plaintiff's testimony regarding her functional limitations. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998).

Having considered the entire record, the ALJ found that plaintiff can return to her past relevant work and is not disabled. (Tr. at 25-26.) The court finds the ALJ's interpretation of the evidence to be rational. See Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ."). While perhaps a somewhat close case, in finding plaintiff capable of performing work the ALJ properly discharged his responsibilities of determining credibility and resolving any conflicts or ambiguities in the testimony. See Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

In light of substantial evidence supporting the ALJ's residual functional capacity determination, the court is unpersuaded by plaintiff's challenge to that determination. While plaintiff parses the ALJ's decision and discusses portions of the records in some detail, it must be noted that the court's scope of review in considering decisions granting or denying Social Security benefits is more limited than that suggested by plaintiff's argument. See Hall v. Sec'y of Health, Educ. & Welfare, 602 F.2d 1372, 1374 (9th Cir. 1979) ("Congress has mandated a very limited scope of judicial review of the Secretary's decisions granting or denying Social Security disability benefits.") It is not the court's role to re-weigh the evidence or substitute its own judgment for the Commissioner's. Winans v. Bowen, 853 F.2d 643, 644-45 (9th Cir. 1987). Further, if there is conflicting evidence supporting a finding of either disability or nondisability, the ALJ may resolve the conflict between experts so long as there is "more than one rational

1  interpretation of the evidence." <u>Sprague</u>, 812 F.2d at 1230.  <u>See</u> <u>also</u> <u>Batson</u>, 359 F.3d at 1193

2  (holding that, "if evidence exists to support more than one rational interpretation, we must defer

3  to the Commissioner's decision").  Plaintiff's argument in this regard must be rejected.

4                                                **CONCLUSION**

5                Accordingly, IT IS HEREBY ORDERED that:

6                1.  Plaintiff's motion for summary judgment is denied;

7                2.  Defendant's cross-motion for summary judgment is granted; and

8                3.  The decision of the Commissioner of Social Security is affirmed.

9  DATED: March 29, 2007.

10

11  _____

12  DALE A. DROZD

13  UNITED STATES MAGISTRATE JUDGE

14  DAD:kw

    Ddad1/orders.socsec/parks0135.order

15

16

17

18

19

20

21

22

23

24

25

26